UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Reco Maximo, III,<br><br>        Plaintiff,<br><br>        v.<br><br>San Francisco Unified School District, et al.,<br><br>        Defendants.<br>_____/ | No. C 10-3533 JL<br><br>**ORDER GRANTING MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE (Docket #s 12 and 18 )** |

**I.     Introduction**

Defendants' motion to dismiss and Plaintiff's Request for Judicial Notice came on for hearing. Attorney for Plaintiffs was Roger Meredith, Law Offices of Roger L. Meredith. Attorney for Defendants was Kevin E. Gilbert, Meyers Nave Riback Silver & Wilson. The Court carefully considered the moving and opposing papers and the arguments of counsel and hereby grants both the motion to dismiss and the Request for Judicial Notice.

The Request for Judicial Notice concerns court documents which clearly fall within the parameters of Rule 201 of the Federal Rules of Evidence, and therefore this Court will take judicial notice of the document regarding Mr. Meredith's appointment as counsel for Plaintiff before the state court. Order of Commissioner Catherine A.S. Lyons of the Dependency Division of the San Francisco Superior Court Appointing Roger Meredith Counsel for Plaintiff (March 18, 2009) (Ex. A to Plaintiff's Request for Judicial Notice.)

With respect to Defendants' motion to dismiss, the Court finds that Plaintiff's state law claims must be dismissed without leave to amend because he failed to exhaust administrative remedies under California Government Code §946.6, (petition for relief from the Claims Presentation requirements), so he could file a late claim after his grandmother, as guardian ad litem, obtained approval from the Superior Court. This failure cannot be cured by amendment. Plaintiff's federal claims must also be dismissed, without leave to amend, since he fails to provide a basis for his standing to sue under both IDEA and the Rehabilitation Act, as a Qualified Individual with a Disability. He should not be granted leave to amend, since he has already amended his complaint once and his previous failure to add facts in support of his standing as a disabled person under federal law indicates that amendment would be futile.

**II.   Plaintiff's Facts**

Maximo Reco is an 11 year-old boy, diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") who is a special education student in SFUSD.

Reco was assigned to Cleveland Elementary School ("Cleveland Elementary"), a school within SFUSD, for the 2008-2009 school year. While Reco was attending Cleveland Elementary, Tavernetti was the principal and Sockwell was an instructional aide assigned to work with special education children, such as Reco. Beginning in August 2008, Sockwell engaged in a pattern and practice of abusing Reco. Sockwell's abuse reached its peak in January 2009 when on two separate occasions he physically beat Reco. Despite Tavernetti and SFUSD's knowledge of the physical and emotional abuse inflicted by Sockwell on Reco, they failed to take any steps to prevent Sockwell from continuing to abuse Reco.

To protect Reco, Ms. Clyburn removed him from Cleveland Elementary and subsequently negotiated different placement with SFUSD via an Individualized Education Plan ("IEP"). Thereafter, Ms. Clyburn, filed a claim pursuant to the California Tort Claim Act, California Government ("Gov't") Code §900 et seq. (the "Tort Claim Act") with SFUSD for the wrongful conduct set forth in the Complaint. After SFUSD rejected the claim, Reco, by and through Ms. Clyburn filed the instant action against Sockwell, Clyburn and SFUSD

for violations of 28 U.S.C. §1983 ("Section 1983"), the "Rehabilitation Act, the Unruh Civil Rights Act, California Civil Code §51, et seq. (the "Unruh Civil Rights Act"), and for tortious conduct including Assault, Battery, Negligence and Intentional Infliction of Emotional Distress.

### III. Defendants' Motion

#### A. Claims Against Defendant Kristin Tavernetti

Defendants ague that Plaintiff's First Amended Complaint (hereafter "FAC") is completely devoid of any meaningful allegations against Ms. Tavernetti, and he completely omits any reference to her in his Government Claim form. The only discussion or reference to Ms. Tavernetti is that she is employed by the District at the Cleveland Elementary School as a Principal (FAC at ¶20) and that Plaintiff's guardian ad litem made certain statements to her immediately following the two complained of incidents. (FAC at ¶¶ 21, 23 and 24.) The FAC lacks any other factual allegations against Ms. Tavernetti.

Defendants contend that the scant references to Ms. Tavernetti in the FAC are insufficient to satisfy Plaintiff's pleading obligations; as Plaintiff must put forth a short plain statement showing that entitlement to relief (Fed. R. Civ. P. Rule 8(a)(1)) including setting forth sufficient factual allegations to raise a right to relief above the speculative level. (*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-1950 (2009).) The combination of a lack of facts as well as the omission of Ms. Tavernetti from the Government Claim is fatal to Plaintiff's claims against her. Defendants ask this Court to grant their Motion to Dismiss without leave to amend as to Defendant Kristin Tavernetti.

#### B. Claims Against the San Francisco Unified School District

All of Plaintiff's claims are derivative of the two interactions between Plaintiff and Defendant Sockwell referenced above. Plaintiff does not cite to any action or inaction by the District, nor does he reference any alleged policy which in any way contributed to the subject incidents. A public entity cannot be found vicariously liable for an employee's actions. (*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658,

691 (1998).) Thus, Defendants ask this Court to find that the Motion to Dismiss should be granted without leave to amend as to Defendant San Francisco Unified School District.

### C. State Law Claims

Defendants argue that Plaintiff waited until January 7, 2010 to submit the required Government Code Claim. Plaintiff's Complaint alleges injuries beginning in January 2009 (e.g. Complaint at ¶ 74 and 75. Plaintiff also submitted an Application for Permission to Present a Late Claim simultaneously with his Claim. Plaintiff's Claim was rejected as untimely and the Application was denied.

Following rejection of the Application, Plaintiff was required to petition the court for relief from the claims presentation requirement if he wished to prosecute any state law claim. (Gov't Code § 946.6.) The petition must be filed within six months after the application for leave to present a late claim is denied or it will be deemed denied. Despite this clear legal obligation, at no time did Plaintiff ever file a formal Petition for Leave to Submit a Late Claim. Plaintiff instead commenced this litigation. That choice is fatal to all of Plaintiff's state law claims. (*Ridley v. City & County of San Francisco*, 272 Cal.App.2d 290 (1969).) "Without a proper filing, and rejection of the claims, no right accrues to seek relief in the courts." Simply put, "there is no constitutional ground to deny the applicability of the claims statutes." (*Ridley*, citing with approval *Wadley v. County of Los Angeles*, 205 Cal.App.2d 668, 672-673 (1962).) "The claims statute is applicable to minors" (*Artukovich v. Astendorf*, 21 Cal.2d 329 (1942)), and Plaintiff's "… filing of the lawsuit cannot serve as the condition precedent to its own filing." (*Stromberg, Inc. v. Los Angeles County Flood District*, 270 Cal.App.2nd 759 (1969).)

Plaintiff's FAC is devoid of any reference to his filing a timely Petition. Thus, the Court concludes that Plaintiff has not satisfied the required conditions precedent to commencing suit on his state law claims. As a result, the Motion to Dismiss should be granted without leave to amend as to Plaintiff's fourth through eighth causes of action.

### D. Plaintiff's federal claims under the First, Second and Third Causes of Action

Nowhere in the Complaint are there any facts or allegations to suggest that Plaintiff is a qualified individual entitled to the protections provided under § 504 of the Rehabilitation Act of 1973 (as codified at 29 U.S.C. § 794) or that the subject discipline was in any way related to his Individualized Education Plan (IEP). The extent of Plaintiff's allegations are simply that he had a learning disability (ADHD), which Plaintiff claims made him a "qualified individual." However, learning disabilities are insufficient to form the basis for an individual being deemed "qualified." *(Halasz v. University New England*, 816 F.Supp. 37 (1993); see also, *Sandison v. Michigan High School Athletic Association, Inc.*, 64 F.3d 1026 (1995) – Student held back to due "learning disability" was not "otherwise qualified" to receive the protections of the Rehabilitation Act.)

Even if Plaintiff could prove he is a qualified individual, his claims are improper as they seek only financial compensation. The statute upon which Plaintiff relies, (29 U.S.C. § 794) allows only equitable relief to private litigants. *(Manecke v. School Bd. of Pinellas County*, 553 F.Supp. 787 (M.D. Fla. 1982).) Plaintiff's claims under the Rehabilitation Act seek only financial damages, which are expressly prohibited. Further, violations of the Rehabilitation Act cannot be asserted as a § 1983 claim. (*Manecke*, 553 F.Supp. at 787; *Norcross v. Sneed*, 573 F.Supp. 533 (W.D. Ark. 1983).)

Plaintiff's failure to state sufficient facts to confirm he is a qualified individual is likewise fatal to his second cause of action for Equal Protection violations. Since Plaintiff is not part of a identifiable class of protected individuals (as discussed above), he fails to plead sufficient facts to support his equal protection claim. Thus, Plaintiff's claims under federal law (first through third causes of action) fail as a matter of law.

Further, as Plaintiff's claims are allegedly derivative of § 504, he was required to exhaust all applicable administrative remedies. Absent Plaintiff's compliance with the administrative remedy requirements as well as the exhaustion of rights conveyed by IDEA, Plaintiff's claims for § 504 and § 1983 must be precluded. *(J.S. Ex Rel N.S. v. Attica Central Schools*, 386 F.3d 107 (2004); *Bibicz v. School Board of Broward County*, 135 F.3d. 1420 (1998).) Plaintiff has failed to make any showing that he engaged in (or even

attempted) any pre-litigation process to exhaust the administrative remedies available under the Individuals with Disabilities Education Act (IDEA). Since none of the subject claims were addressed by a hearing officer through administrative hearing, they were not administratively exhausted and cannot be considered by a District Court. *(M.K. Ex Rel Mrs. K. v. Sergi*, 554 F.Supp.2d 201 (D.Conn. 2008).) Thus, Defendants Motion to Dismiss must be granted as to Plaintiff's claims under the First, Second and Third Causes of Action.

For the foregoing reasons Defendants ask this Court to Dismiss Plaintiff's First Amended Complaint in its entirety without leave to amend.

### IV. Plaintiff's Legal and Factual Argument in Opposition to the Motion to Dismiss

#### A. Standard under FRCP 12(b)(6)

Pursuant to FRCP 12(b)(6), the allegations of a complaint must be accepted as true on a motion to dismiss. Cruz v. Beto, 405 U.S. 319, 322 (1972); *Dooley v. Reiss*, 736 F.2d 1392, 1393 (9th Cir. 1984). The defendant bears the burden of demonstrating that the plaintiff has not met the pleading requirements of FRCP 8(a)(2) in stating a claim. *Gallardo v. DiCarlo*, 203 F.Supp.2d 1160, 1165 (C.D. Cal. 2002). Therefore, all factual allegations in a complaint should be construed in the light most favorable to the plaintiff for purposes of ruling on a motion to dismiss. *O'Loghlin v. County of Orange*, 229 F.3d 871 (9th Cir. 2000). Motions alleging that a plaintiff has failed to state a claim, such as the instant motion, "are disfavored and rarely granted." *Gay-Straight Alliance Network v. Visalia Unified School Dist.*, 262 F.Supp.2d 1088, 1098 (E.D. Cal. 2001); *McGary v. City of Portland,* 386 F.3d 1259, 1270 (9th Cir. 2004).

Federal courts are a notice pleading jurisdiction, thus a complaint need not plead all elements of a prima facie case in order to survive a motion to dismiss. *Skierkewicz v. Sorem N.A.*, 534 U.S. 506, 510-512 (2002); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004). Rather, to avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter… to state a claim to relief that is plausible on its face." *Weber v. Dep't of Veteran Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (emphasis added). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Given that the complaint should be construed favorably to the pleader, the court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim. *Conley v. Gibson*, 355 U.S. 41, 45 (1957); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

### B. Plaintiff claims he properly alleges his causes of action under California law

Defendants contend that Reco's Fourth through Eight Causes of Action under California law are barred because Reco has failed to: 1) satisfy the Tort Claim Act by filing a timely tort claim pursuant to Gov't Code §900 et seq.; and 2) provide a statutory basis for his common law tort claims of Assault, Battery, Negligence and Intentional Infliction of Emotional Distress. Defendants have alleged only broadly that "all of Plaintiff's state law claims" are barred because Plaintiff failed to file a timely complaint under the Tort Claim Act. [Memorandum of Points and Authorities in Support of the Motion to Dismiss the First Amended Complaint ("Motion to Dismiss"), p. 7.] However, the Motion to Dismiss makes absolutely no reference to the Fourth Cause of Action for Violation of the Unruh Civil Rights Act. Nonetheless, as set forth in Section III.A.1 below, since all pleading requirements have been satisfied, Defendants cannot meet their burden to show this cause of action must be dismissed.

As set forth below, Plaintiff fails to meet the statutory and pleading requirements, despite already having amended his complaint. His complaint should be dismissed with prejudice and without leave to amend, as to both California and federal causes of action.

### IV. ANALYSIS

### A. Plaintiff's failure to comply with the California Government Code requirements is fatal to his state law claims

Plaintiff concedes that Defendants correctly argue that for Reco to bring the California claims for damages as alleged in the Four through Eighth Causes of Action in the Complaint, he must satisfy the requirements of the Tort Claim Act. However, Plaintiff asks

this Court to find that the Complaint provides that Reco clearly has met the requirements of the Tort Claim Act because the Application and General Claim were filed within the statutory time frame. Plaintiff also argues that SFUSD's wrongful conduct in providing Ms. Clyburn with the SFUSD Complaint and Claim Form instead of a Tort Claim Act form estops it from asserting that the claim was not timely filed.

In support of his contention that the application was timely filed, Plaintiff argues that Gov't Code §911.2 requires that personal injury claims against a public entity be filed no later than six months after the accrual of the cause of action. However, a late claim, if submitted with an application, such as the one filed by Reco, is permissible if it is filed within one year of the accrual of the cause of action and states the reason for delay. Gov.'t Code §911.4 (b). If such an application is filed and presented to the entity, regardless of whether the entity acts on it or rejects it, a plaintiff may seek judicial relief for the wrongs committed. Gov't Code §§ 945.4; 945.6.

However, Defendants respond that, although Plaintiff's Opposition attempts to suggest that his state law claims are saved since his Government Claim "could not have been filed by Ms. Clyburn at an earlier date because of Reco's status as a ward of the San Francisco Superior Juvenile Court," (Opposition at 6:3-5.) Plaintiff's contention is both factually and legally incorrect. The actual sequence of events bears noting, with the relevant incidents as follows:

**January 9 and 16, 2009** - incidents giving rise to litigation (FAC at ¶20,22);

**March 18, 2009** - Order issued by SF Superior Court appointing Roger Meredith, Esq. and Ms. Clyburn as Plaintiff's legal counsel and Guardian ad Litem, respectively (Pltf RJN, Ex. A);

**January 7, 2010** - Government Claim submitted on behalf of Plaintiff (Ex. B to Pltf FAC);

**August 11, 2010** - Complaint filed in this case (Court Docket # 1)

The San Francisco Superior Court granted Plaintiff's request and appointed legal counsel and a Guardian Ad Litem on March 18, 2009, approximately two months following the incidents giving rise to this litigation. Despite that appointment, Plaintiff's counsel and

the Guardian Ad Litem waited until January 7th of the following year before finally submitting the required Government Claim. The fact that Plaintiff was represented for almost a full year by court-appointed legal counsel, yet did nothing, is significant and confirms the state law claims must be dismissed; a delay in filing an application and claim against a governmental entity following legal counsel's involvement and knowledge of the facts establishing the governmental entity's potential liability was fatal to Plaintiff's claims and counsel could not show that it exercised reasonable diligence in prosecuting the claims. (*Greene v. State of California*, 222 Cal.App.3d 117 (1990).)

Even assuming Plaintiff and his attorney had acted diligently (which Defendants dispute), Plaintiff has still failed to comply with the mandatory requirements within the Government Claims Act. While Plaintiff has submitted a claim (albeit late) and a application for leave to present a late claim (which was denied), Plaintiff has never filed the required petition for relief from the Claims Presentation Requirements, as set forth within California Government Code § 946.6. In summary, that statute allows an aggrieved plaintiff to seek relief from an untimely claim by filing a petition with the Superior Court, with the petition to be filed within six months after the application is denied. (Cal. Gov't Code § 946.6(b)(3).)

Instead of complying with those requirements by filing a petition in hopes of salvaging his state law claims, Plaintiff simply waited another eight months before commencing litigation. Plaintiff completely ignored the process established by Government Code § 946.6, proceeding with litigation at his own peril.

Plaintiff's failure to seek leave as outlined within Government Code § 946.6 before filing suit divests the Court of jurisdiction to grant any relief to Plaintiff for any state law claim. (*Kagy v. Napa State Hospital*, 28 Cal.App.4th 1 (1994).) The lack of jurisdiction applies equally in federal court. (*Hernandez v. McClanahan*, 996 F.Supp. 975 (N.D. Cal. 1998) - Plaintiff who sought judicial review from denial of his state application to file an untimely California tort claims act claim in Federal Court rather than in state court filed to state claim under Act; Compliance with the Act's procedural requirements was substantive element of cause of action and federal court lacked jurisdiction to grant leave to file untimely claim.)

Plaintiff argues that the letter "To whom it may concern" sent on the date of the incident with the corresponding "Concern Form" are together sufficient to satisfy Plaintiff's claim presentation requirement. (Ex. A to FAC.) Plaintiff was a ward of the Court as of January 16, 2009, meaning that Ms. Clyburn was not authorized to take any action on his behalf. Even if Clyburn were authorized, Defendants argue that the January 16, 2009 correspondence failed to satisfy the required elements for submission of a claim as established by California Government Code § 910. Most significant is Plaintiff's own action a year later; if Plaintiff actually considered the "To whom it may concern" letter to be a formal claim, why did he submit yet another claim on January 7, 2010? (Ex. B to FAC.)

Plaintiff's disregard for and failure to comply with the provisions of the Government Code have resulted in significant prejudice to Defendants. The Claims Presentation Requirements serve two basic purposes: "First, they give the governmental entity an opportunity to settle just claims before suit is brought. Second, they permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim." (1 Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th Ed. 2006) Claims Against Public Entities, § 5.6, p. 168 (California Government Tort Liability Practice), quoting 4 Cal. Law Revision Com. Rep. (1963) p. 1008.) The requirement also enables the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future. (*Phillips v. Desert Hospital Dist.*, 49 Cal.3d 699, 709 (1989); *Loehr v. Ventura County Community College Dist.*, 147 Cal.App.3d 1071, 1079 (1983).) The process that Plaintiff has undertaken has denied the District and its employees with each and every one of these statutory rights.

In interpreting the [Government] Claims Act, the Supreme Court has noted "[T]he intent of the [act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied." (*Brown v. Poway Unified School Dist.*, 4 Cal.4th 820, 829 (1993).) Plaintiff has failed to comply with those rigidly delineated circumstances. Not only was his claim late, but at no time has he

ever filed the petition required by Government Code § 946.6. As the time to seek any such relief has long since passed, there is nothing Plaintiff can do to salvage his state law claims. Thus, they are dismissed with prejudice.

**B.     Plaintiff's allegations against Defendant Kristin Tavernetti are deficient**

Tavernetti's involvement in the incident giving rise to this litigation was limited to her employment by the District as the Principal of Cleveland Elementary School (FAC at ¶ 20) and Plaintiff's Guardian Ad Litem making various statements to Tavernetti immediately following the incident. (FAC at ¶¶ 21, 23, 24.) Plaintiff now argues that Tavernetti should be found liable under a theory of ratification. As discussed below, Plaintiff's argument is incorrect.

**1.     The First Amended Complaint fails to plead facts sufficient to constitute a *Monell* claim against the District or Tavernetti**

**a.     No evidence of ratification**

Even assuming Plaintiff could prove a violation of his constitutional rights and that he had pled and prosecuted a Monell claim within the FAC, he still has not shown that his injuries were caused by any policy of Tavernetti or the District or that either Defendant ratified any action by Sockwell (to the extent there was any actionable incident). While it is true that a municipality may be held liable for a constitutional violation under the theory of ratification, it must be based upon the actions of an authorized policymaker approving a subordinate's decision and the basis for it. (*Lytle v. Carl,* 382 F.3d 978, 987 (9th Cir. 2004).) "A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." (Id.) The policymaker must have knowledge of the constitutional violation and must make a "conscious, affirmative choice" to ratify the conduct at issue. (*Id.; Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003), overruled on other grounds by *Brousseau v. Haugen*, 543 U.S. 194 (2004).)

In *Haugen*, an officer (Haugen) shot a suspect who was attempting to drive away in his jeep, the Ninth Circuit held that there were no facts in the record to "suggest that the single failure to discipline Haugen rises to the level of such a ratification." (*Haugen*, 351 F.3d at 393.) In order for there to be ratification, there must be "something more" than a

single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures. (*Kanae v. Hodson*, 294 F.Supp.2d 1179, 1191 (D. Hawaii 2003).) As aptly explained by the court in *Kanae*:

> The law does not say that every failure to discipline an officer who has shot someone is evidence of a "whitewash" policy or some other policy of "sham" investigations. The law does not say that, whenever an investigative group accepts an officer's version over a victim's differing version, this acceptance establishes a policy for which a municipality may be held liable under § 1983. If that were the law, counties might as well never conduct internal investigations and might as well always admit liability. But that is not the law. The law clearly requires "something more."

(Id. at 1191. See also, *Peterson v. City of Forth Worth Texas*, 588 F.3d 838, 848 (5th Cir. 2009), holding that there was no ratification of use of excessive force where the Chief of Police determined, after investigation, that the officers complied with department policies; *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989), "As we have indicated before, we cannot hold that the failure of a [public entity] to discipline in a specific instance is an adequate basis for municipal liability under Monell".)

The entirety of Plaintiffs' *Monell* argument is based upon speculation and conjecture. Nowhere within the FAC is there any facts to suggest ratification occurred. Similarly, at no point does Plaintiff ever mention any District policies which caused or contributed to this incident. Thus, any allegations of *Monell* liability based upon ratification or a deficient policy are deficient.

### b. No respondeat superior liability for municipality under §1983

To the extent Plaintiff is attempting to argue that his § 1983 claims are based upon a failure to protect, those arguments are also deficient. The governing standard for § 1983 claims against municipalities is well established. *(Monell v. Dept. of Soc. Serv. of N.Y.C*, 436 U.S. 658, 690 (1987).)

The Court in *Monell* expressly analyzed the applicability of § 1983 claims to local municipalities, and held that local governments cannot be made liable for the unconstitutional actions of its employees under a respondeat superior theory. (*Id.*, 436 U.S.

at 692 (Section 1983 "language cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor").)

### c. No due process claim under §1983 based on duty to protect from violence

It is well-established that there can be no due process violation based on the duty to provide protection from violence. *(DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989); *Johnson v. City of Seattle*, 474 F.3d 634 (9th Cir. 2007).) Inaction by a public entity or its employees cannot be used to invoke a violation of the due process clause of the 14th Amendment. Accordingly, if based solely on a due process claim, Plaintiff's § 1983 claim fails at the outset.

### d. Tavernetti and SFUSD are entitled to qualified immunity by statute

To the extent Plaintiff argues the District should have taken some action or course, those arguments are also deficient as Defendants would be entitled to qualified immunity from any such matters due to the discretion vested in Tavernetti and the District through the California Government Code. (Discretionary Immunity – Gov't Code § 820.2, Immunity for failure to provide protection – Gov't Code § 845.)

### D. Plaintiff may not sue for Section 504 violations

Plaintiff attempts to avail himself of the benefits of Section 504 (as codified at 29 U.S.C. § 794) without complying with the exhaustion requirements and restrictions on damages. However, Plaintiff cannot have it both ways. Either he is seeking relief under Section 504 and must satisfy the exhaustion requirements or his federal claims must be dismissed.

Plaintiff has not offered any meaningful discussion of why the exhaustion requirement is inapplicable and would not be beneficial for his claims other than stating he is currently enrolled in another school within the District. The purpose of the exhaustion requirement is significant; it "embodies the notion that 'agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer.'" (*Hoeft v. Tucson Unified School District*, 967 F.2d 1298, 1303 (9th Cir. 1992)

citing *McCarthy v. Madigan*, 503 U.S. 140 (1992).) If Plaintiff truly has a complaint related to an IEP, he must satisfy the exhaustion requirements. If Plaintiff doesn't have a complaint or allegation that any District policy is deficient and/or contributed to this incident, then he must concede that his *Monell* allegations (and the related federal claims) against Tavernetti and the District are without merit.

It is also important to note that just because a student receives an IEP, he is not necessarily classified as disabled and a qualified individual for Section 504's purposes. As discussed in detail within Defendants' moving papers, being diagnosed with ADHD is insufficient to form the basis for an individual to be deemed "qualified." (*Halasz v. University New England,* 816 F.Supp. 37 (1993); see also *Sandison v. Michigan High School Athletic Association, Inc.,* 64 F.3d 1026 (1995) – Student held back to due "learning disability" was not "otherwise qualified" to receive the protections of the Rehabilitation Act.) Plaintiff's self-classification as a qualified individual is insufficient to grant him the rights to pursue a claim for financial compensation under Section 504.

Also absent from the FAC, as well as Plaintiff's Opposition, is any causal link between the alleged disability and the incident giving rise to this litigation. While Plaintiff's FAC suggests that his claims are related to "discriminating against people with disabilities" (Opposition at 11:23), there are no facts or arguments to suggest such an analysis is appropriate here. In fact, the FAC confirms that the incident giving rise to this litigation involves Plaintiff allegedly being disciplined following his fighting with another student and participating in a food fight in the school cafeteria. (FAC at ¶¶ 20, 22.)

### E.   Leave to Amend must be denied

The facts alleged by Plaintiff in the FAC confirm that no amendment can repair Plaintiffs' deficient pleadings. There is no possibility that Plaintiff could cure his failure to submit the required Government Claim within six months of the incident. Similarly, there is nothing Plaintiff can do to backdate the required petition under Government Code § 946.6 to cure the Government Code presentment violation. Nor can Plaintiff prove that he is a Qualified Individual with a Disability under §504, since ADHD is not a qualifying disability.

Plaintiff has already had one opportunity to amend the Complaint following receipt of Defendants' first Motion to Dismiss. Thus, leave to amend would be futile.

### V. Conclusion

Defendants' Motion to Dismiss is granted. Plaintiff's state law claims are dismissed without leave to amend, because he failed to exhaust administrative remedies under California Government Code §946.6, the (petition for relief from the Claims Presentation requirements), so he could file a late claim after his grandmother, as guardian ad litem, obtained approval from the Superior Court. Plaintiffs's federal claims are dismissed, without leave to amend, since he fails to provide a basis for his standing to sue under both IDEA and the Rehabilitation Act, as a Qualified Individual with a Disability.

IT IS SO ORDERED.

DATED: March 21, 2011

_____
James Larson
United States Magistrate Judge

G:\JLALL\CASES\CIVIL\10-3533\Order-12,18.wpd